Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 22, 2017

**2017 CO 49**

**No. 13SC624, <u>Lucero v. People</u>—Life without parole—Juveniles—Eighth Amendment—Colorado Rules of Criminal Procedure 35(b) and 35(c).**

The supreme court considers whether <u>Graham v. Florida</u>, 560 U.S. 48 (2010), and <u>Miller v. Alabama</u>, 132 S. Ct. 2455 (2012), apply to aggregate term-of-years sentences imposed on juvenile defendants convicted of multiple offenses. <u>Graham</u> holds that the Eighth Amendment to the U.S. Constitution prohibits the sentence of life without parole for a juvenile nonhomicide offender. <u>Miller</u> bars mandatory life without parole for any juvenile offender. Because life without parole is a specific sentence imposed for a single offense, the supreme court holds that <u>Graham</u> and <u>Miller</u> do not apply to aggregate term-of-years sentences imposed for multiple offenses. The supreme court thus holds that <u>Graham</u> and <u>Miller</u> do not apply to Lucero's aggregate term-of-years sentence.

The supreme court also considers whether the court of appeals erred by treating Lucero's Rule 35(b) motion for sentence reduction as a Rule 35(c) motion challenging the constitutionality of his sentence. Because a court may properly characterize a mischaracterized issue, and Lucero argued that his sentence must be reduced under <u>Graham</u> to meet constitutional standards, the supreme court holds that the court of appeals did not err. Accordingly, the supreme court affirms the court of appeals.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 49

### Supreme Court Case No. 13SC624
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 11CA2030

**Petitioner:**

Guy Lucero,

v.

**Respondent:**

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
May 22, 2017

**Attorneys for Petitioner:**
Hopkins Law LLC
James W. Hopkins
  *Loveland, Colorado*

Samler & Whitson PC
Eric Samler
Hollis Whitson
  *Denver, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
John T. Lee, Assistant Attorney General
  *Denver, Colorado*

**Attorney for Amicus Curiae Colorado Criminal Defense Bar:**
Philip A. Cherner
  *Denver, Colorado*

**Attorneys for Amici Curiae Juvenile Law Center, Colorado Juvenile Defender Center, Center for Children's Law and Policy, and Coalition for Juvenile Justice:**
Juvenile Law Center
Marsha Levick
  *Philadelphia, Pennsylvania*

Colorado Juvenile Defender Center
Kim Dvorchak
  *Denver, Colorado*

**JUSTICE EID** delivered the Opinion of the Court.
**JUSTICE GABRIEL** concurs in the judgment.

¶1 At age fifteen, Guy Lucero was charged with multiple offenses arising from a drive-by shooting in a neighborhood in Denver. He was charged and tried as an adult. At trial in 2006, two witnesses identified Lucero as one of the shooters, and the jury convicted him of conspiracy to commit first-degree murder, attempted first-degree murder, and two counts of second-degree assault. The trial court sentenced Lucero to consecutive term-of-years prison sentences for each count, aggravated as crimes of violence, resulting in an aggregate sentence of eighty-four years in the custody of the Department of Corrections. The court of appeals affirmed Lucero's convictions and sentences on direct appeal.

¶2 In 2010, the U.S. Supreme Court held in Graham v. Florida, 560 U.S. 48 (2010), that the Eighth Amendment to the U.S. Constitution prohibits the imposition of a life without parole sentence on a juvenile nonhomicide offender, concluding that states must "give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Subsequently, Lucero filed a motion pursuant to Rule 35(b) of the Colorado Rules of Criminal Procedure seeking reduction of his sentence. As relevant here, Lucero argued that his sentence must be reduced under Graham to meet constitutional standards, because an eighty-four-year sentence imposed on a juvenile carries the same implications as a sentence of life without parole. The trial court denied the motion following a hearing.

¶3 Lucero appealed the trial court's order, and the court of appeals affirmed. People v. Lucero (Lucero II), 2013 COA 53, ¶ 1, __ P.3d __. Treating his claim as one under Rule 35(c), id. at ¶ 5, the court held that Lucero's sentence was constitutional

under both <u>Graham</u> and <u>Miller v. Alabama</u>, 132 S. Ct. 2455 (2012), reasoning that because Lucero would be eligible for parole at the age of fifty-seven, he has "'a meaningful opportunity for release' during his natural lifetime," <u>Lucero II</u>, ¶ 12.

¶4     We granted certiorari and now affirm the court of appeals.[1]  Taking a different approach than the court of appeals, we hold that neither <u>Graham</u> nor <u>Miller</u> applies to an aggregate term-of-years sentence, which is the sentence Lucero challenges.  In <u>Graham</u>, the U.S. Supreme Court held unconstitutional a life without parole sentence imposed on a juvenile for a single nonhomicide offense.  560 U.S. at 57, 82.  In <u>Miller</u>, the Court held that a sentence of "mandatory life without parole for those under the age of 18 at the time of their crimes" violates the Eighth Amendment.  132 S. Ct. at 2460. Life without parole is a specific sentence, distinct from sentences to terms of years. Lucero was not sentenced to life without parole.  Rather, he received multiple term-of-years sentences for multiple convictions.  Therefore, <u>Graham</u> and <u>Miller</u> are inapplicable to, and thus do not invalidate, Lucero's aggregate sentence.  We also reject Lucero's argument that the court of appeals erred in treating his claim as one under Rule 35(c).

## I.

¶5     In the early hours of June 25, 2005, Lucero, then fifteen years old, arrived at a birthday party his cousin was throwing for her brother.  The party was at a house in a

---

[1] Today we also decide the companion cases of <u>People v. Rainer</u>, 2017 CO 50, __ P.3d __, <u>Armstrong v. People</u>, 2017 CO 51, __ P.3d __, and <u>Estrada-Huerta v. People</u>, 2017 CO 52, __ P.3d __.

neighborhood in Denver. Upon arriving, Lucero asked his cousin for alcohol, but she refused to serve him. Lucero, a North Side Mafia gang member, then turned to another party attendee, D.H., a Bloods gang member, and, calling him a "slob"—a derogatory term used to describe Bloods members—demanded to know why he was allowed to drink. Lucero was either ordered to leave the party or left of his own accord. Before leaving, Lucero warned that he would return with his father, also a member of the North Side Mafia.

¶6    Lucero and his father did return. Once they were back at the party, Lucero's father lured D.H. out of the house. When D.H. walked outside, a car drove by, firing shots. Four people were shot and sustained non-fatal injuries. D.H. was not among those shot.

¶7    Lucero was charged with three counts of criminal attempt to commit first-degree murder, one count of first-degree assault, two counts of second-degree assault, and three counts of crime of violence in connection with the shooting, and he was tried as an adult. The complaint was later amended to add a charge of conspiracy to commit first-degree murder. At trial in 2006 two witnesses identified Lucero as one of the shooters, and the jury convicted him of conspiracy to commit first-degree murder, attempted first-degree murder, and two counts of second-degree assault. The trial court sentenced him to term-of-years sentences for each count, aggravated as crimes of violence, to be served consecutively. Thus, Lucero received an aggregate sentence of eighty-four years in the custody of the Department of Corrections—thirty-two years each for the conspiracy and attempt charges, and ten years for each of the assault charges. The court

5

of appeals affirmed Lucero's convictions and sentences on direct appeal. <u>People v. Lucero</u>, No. 07CA0774, slip op. at 1 (Colo. App. July 2, 2009).

¶8     In July 2010, Lucero filed a motion for sentence reduction pursuant to Rule 35(b) of the Colorado Rules of Criminal Procedure.[2] Lucero presented details of his difficult childhood, his mental health history, and a psychological evaluation in support of his motion. He also argued that, under <u>Graham v. Florida</u>, 560 U.S. 48 (2010), his aggregate sentence was the equivalent of a sentence of life without parole.

¶9     The trial court granted Lucero's request for a hearing on the motion. At the hearing, which proceeded by offer of proof, Lucero's counsel urged the court to consider <u>Graham</u> and argued that Lucero would die in prison before any meaningful opportunity for release. The court ultimately denied Lucero's motion. In a written order, the court acknowledged Lucero's age at the time of his offenses, but concluded that the court had taken Lucero's youth into "significant consideration" at the time of sentencing, and the sentences were appropriate due to the nature of the crimes and the court's reservations about whether Lucero had accepted full responsibility for his acts.

¶10     Lucero appealed, and the court of appeals affirmed the order. <u>Lucero II</u>, ¶ 1. First, the court of appeals noted the People's argument that Lucero's claim is unreviewable under Rule 35(b), but it declined to rule on the issue. <u>Id.</u> at ¶ 5. Instead, the court found review available under Rule 35(c)(2)(I), which allows for post-conviction review where a defendant alleges that a conviction or sentence violates

---

[2] Rule 35(b) authorizes the court to reduce a sentence upon the timely filing of a proper motion for reduction. <u>See</u> Crim. P. 35(b).

6

the U.S. Constitution.[3]  Id.  Second, the court rejected Lucero's contention that his aggregate sentence constitutes cruel and unusual punishment and thus violates the Eighth Amendment under Graham and Miller.  Id. at ¶ 1.  The court found that Lucero has a "meaningful opportunity for release" because he will be eligible for parole at age fifty-seven, and the natural life expectancy of a person born the year of Lucero's birth is seventy-five years.  Id. at ¶¶ 12–13.

¶11  Lucero petitioned this court to review the court of appeals' holding on the merits as well as its treatment of his Rule 35(b) appeal as a Rule 35(c) appeal.  We granted certiorari.[4]  We now hold that Graham and Miller do not apply to consecutive term-of-years sentences imposed for multiple convictions.  Whereas the court of appeals upheld Lucero's sentence on the grounds that it complies with Graham by providing a "meaningful opportunity for release," we conclude that Graham and Miller do not

---

[3] Rule 35(c)(2)(I) of the Colorado Rules of Criminal Procedure states:

> [E]very person convicted of a crime is entitled as a matter of right to make application for postconviction review upon the grounds hereinafter set forth. Such an application for postconviction review must, in good faith, allege . . . [t]hat the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state.

[4] We granted certiorari to consider the following issues:

1. Whether the court of appeals erred by extending Graham v. Florida, 560 U.S. 48 (2010), and Miller v. Alabama, 132 S. Ct. 2455 (2012), to invalidate a consecutive term-of-years sentence imposed on a juvenile convicted of multiple offenses.

2. Whether a conviction for attempted murder is a non-homicide offense within the meaning of Graham v. Florida, 560 U.S. 48 (2010).

3. Whether the court of appeals exceeded its authority and violated the principle of party presentation by sua sponte treating the appeal of a properly filed Rule 35(b) motion as if it were an appeal of a Rule 35(c) motion.

apply to, and therefore do not invalidate, Lucero's aggregate term-of-years sentence. We also hold that the court of appeals did not err when it treated his claim as one under Rule 35(c). Accordingly, we affirm the court of appeals.

## II.

¶12    First, we consider whether <u>Graham</u> and <u>Miller</u> apply to aggregate term-of-years sentences and conclude that they do not.[5] We then address whether the court of appeals erred in treating Lucero's claim as one under Rule 35(c), and conclude that it did not.

## A.

¶13    Lucero's claim that his sentence is unconstitutional under <u>Graham</u> and <u>Miller</u> is a constitutional challenge, which we review de novo. <u>Villanueva v. People</u>, 199 P.3d 1228, 1231 (Colo. 2008).

¶14    Lucero argues that <u>Graham</u> and <u>Miller</u> apply to his aggregate sentence, both because eighty-four years is effectively a sentence of life without parole, and because the reasoning of the two cases must extend beyond the sentence of life without parole to govern lengthy, consecutive term-of-years sentences as well. We disagree.

¶15    <u>Graham</u> and <u>Miller</u> apply only where a juvenile is sentenced to the specific sentence of life without the possibility of parole for one offense. <u>See</u> <u>Graham</u>, 560 U.S. at 57, 63; <u>Miller</u>, 132 S. Ct. at 2461–63; <u>see also</u> <u>Jackson v. State</u>, 194 S.W.3d 757, 759 (Ark.

---

[5] Senate Bills 16-180 and 16-181, signed into law June 2016, do not affect our holding. Senate Bill 16-180 creates a specialized program that allows eligible juvenile offenders convicted as adults to obtain early release, and Senate Bill 16-181 applies primarily to juveniles convicted of first-degree murder. <u>See</u> S.B. 16-180, 16-181, 70th Gen. Assemb., Reg. Sess. (Colo. 2016).

2004) (showing that Jackson, one of the two petitioners in <u>Miller</u>, was sentenced to life in prison on a capital murder conviction). In <u>Graham</u>, the petitioner had been sentenced by a Florida court to life imprisonment on a charge of armed burglary and to fifteen years on a charge of attempted armed robbery, offenses he committed at age sixteen, after he admitted to violating conditions of his probation. 560 U.S. at 53–57. Because Florida had abolished its parole system, the life sentence was a sentence of life without the possibility of parole. <u>Id.</u> at 57.

¶16      The U.S. Supreme Court in <u>Graham</u> first concluded that the sentence of life without parole is "a particular type of sentence" and juveniles "an entire class of offenders." <u>Id.</u> at 61. Accordingly, the Court followed a line of Eighth Amendment precedent barring certain punishments for groups of offenders, <u>id.</u> at 60–62, and established a categorical rule that, "for a juvenile offender who did not commit homicide[,] the Eighth Amendment forbids the sentence of life without parole,"[6] <u>id.</u> at 74. To reach its decision, the Court examined "objective indicia of national consensus." <u>Id.</u> at 62. Citing its own research and a 2009 study that showed only 109 juveniles nationwide serving life without parole sentences solely for nonhomicide offenses, the Court found a national consensus against the sentencing practice. <u>Id.</u> at 62–67 (citing Paolo G. Annino, David W. Rasmussen & Chelsea Boehme Rice, <u>Juvenile Life without Parole for Non-Homicide Offenses: Florida Compared to Nation</u> 2 (Sept. 14, 2009) [hereinafter "<u>Annino Study</u>"]).

---

[6] A "juvenile" is anyone under the age of eighteen when the offense at issue was committed. <u>Graham</u>, 560 U.S. at 74–75.

9

¶17    The Court then considered the culpability of the class of offenders and the severity of a life without parole sentence.  Id. at 67.  Reasoning that juveniles as a group are less mature, more vulnerable to peer pressure, and more capable of change than adults, the Court concluded that none of the recognized goals of penal sanctions justifies imposing "the second most severe penalty permitted by law," a sentence of life without the possibility of parole, on juvenile nonhomicide offenders.  Id. at 68–74.  Thus, the Court ruled the sentencing practice unconstitutional.  It limited its holding, however, by declaring that, while states must "give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," the Eighth Amendment "does not require [a] State to release [a juvenile] offender during his natural life" or to "guarantee eventual freedom."  Id. at 75.

¶18    In Miller, the U.S. Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."  132 S. Ct. at 2469.  The petitioners in Miller had been convicted as juveniles of crimes for which the mandatory minimum punishment was life imprisonment without parole.  Id. at 2461–63.  Citing much of its reasoning in Graham on juveniles' lessened culpability, the Court ruled that "a judge or jury must have the opportunity to consider mitigating circumstances" such as age before sentencing a juvenile to life without parole.  Id. at 2464–68, 2475.  The Court did not categorically ban life sentences for juveniles with the possibility of parole, or life without parole where the sentencing authority considered an offender's youth and attendant circumstances.  Id. at 2469, 2471, 2474–75.

¶19 Lucero, unlike the petitioners in <u>Graham</u> and <u>Miller</u>, did not receive a sentence of life without the possibility of parole. Rather, he received four consecutive sentences to terms of years for four separate convictions. Colorado has a parole system, and the parties agree that Lucero will be eligible for parole when he is fifty-seven. Thus, the eighty-four-year sentence Lucero now challenges is an aggregate term-of-years sentence. Multiple sentences imposed for multiple offenses do not become a sentence of life without parole, even though they may result in a lengthy term of incarceration. Life without parole is a specific sentence, imposed as punishment for a single crime, which remains distinct from aggregate term-of-years sentences resulting from multiple convictions.

¶20 Neither <u>Graham</u> nor <u>Miller</u> concerns or even considers aggregate term-of-years sentences. In both cases, the Court was assessing the proportionality of a single life without parole sentence imposed for a single conviction. <u>See</u> <u>Graham</u>, 560 U.S. at 57, 63; <u>Miller</u>, 132 S. Ct. at 2461–63; <u>see also</u> <u>Jackson</u>, 194 S.W.3d at 759. The opinions refer repeatedly and unambiguously to the sentence of life without parole. In <u>Graham</u>, the Court categorically barred the "particular" sentence of life without parole for juvenile nonhomicide offenders, saying nothing about consecutive or aggregate sentences. <u>See</u> 560 U.S. 48; <u>id.</u> at 124 (Alito, J., dissenting) ("Nothing in the Court's opinion affects the imposition of a sentence to a term of years without the possibility of parole."). The study the Court cited counted only juvenile nonhomicide offenders serving the specific sentence of life without parole, <u>see</u> <u>Annino Study</u> at 1, and the Court explained that <u>Graham</u> similarly concerned "only those juvenile offenders sentenced to life without

parole solely for a nonhomicide offense." Graham, 560 U.S. at 63. Furthermore, neither the study nor the Court listed Colorado as a state in which a juvenile was serving such a sentence, despite the fact that Lucero was serving the sentence he now challenges at the time Graham was decided. See id. at 64–65; see also Annino Study at 1–2, 14 (Table A). Graham therefore cannot properly be expanded to apply to Lucero's aggregate term-of-years sentence.

¶21     Miller likewise speaks only of the sentence of life without parole, calling it a "particular penalty." 132 S. Ct. at 2471. In its analysis, the Court distinguished the mandatory sentencing schemes at issue in Miller from the impliedly constitutional alternatives whereby "a judge or jury could choose, rather than a life-without-parole sentence, a lifetime prison term with the possibility of parole or a lengthy term of years." Id. at 2469, 2474–75. This distinction indicates that, contrary to what Lucero argues, the analysis in Miller is limited to the sentence at issue in that case, mandatory life without parole, and does not extend to lengthy aggregate sentences or life sentences with the possibility of parole. Because Lucero was sentenced to consecutive terms of years, not mandatory life without parole, Miller does not apply to Lucero's sentence and thus cannot render it unconstitutional.

¶22     As support for his argument that the reasoning, if not the precise holdings, of Graham and Miller applies to and invalidates his lengthy aggregate term-of-years sentence, Lucero points out that courts have come to different conclusions on the question. As our analysis above demonstrates, however, we believe that Graham and

<u>Miller</u> do not apply as broadly as Lucero suggests, and we thus disagree with those courts that have concluded that they do.

¶23 Finally, we note that our decision today is supported by our reasoning in <u>Close v. People</u>, 48 P.3d 528 (Colo. 2002). In <u>Close</u>, we held that "a separate [Eighth Amendment] proportionality review must be completed for each sentence imposed consecutively, rather than considering the cumulative total of such consecutive sentences." <u>Id.</u> at 532. We reasoned that, because each sentence is a separate punishment for a separate offense, the proper question on review is whether a sentence is constitutionally disproportionate to the offense for which it was imposed. <u>Id.</u> at 538–40. If we were to consider instead the aggregate sentence, as Lucero argues we must, "the result would be the possibility that a defendant could generate an Eighth Amendment disproportionality claim simply because that defendant had engaged in repeated criminal activity." <u>Id.</u> at 539. We find this reasoning equally informative here. The question of whether Lucero's consecutive term-of-years sentences meet the dictates of the Eighth Amendment's proportionality principle requires consideration of each individual crime and each sentence imposed.

¶24 For these reasons, we affirm the court of appeals' conclusion that Lucero's sentence is consistent with the Eighth Amendment, although on different grounds.[7]

---

[7] Because we conclude that <u>Graham</u> and <u>Miller</u> do not apply to aggregate term-of-years sentences, we need not address the question of whether attempted murder is a nonhomicide offense under those decisions.

¶25    Lucero also argues that the court of appeals erred in treating his appeal of his Rule 35(b) motion for a reduction of sentence as an appeal of a Rule 35(c) motion challenging the constitutionality of his sentence.  We find no merit in this argument.

¶26    Lucero argues that by <u>sua</u> <u>sponte</u> "converting" his Rule 35(b) motion to a Rule 35(c) motion, the court of appeals violated the principle of "party presentation," under which courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."  <u>Greenlaw v. United States</u>, 554 U.S. 237, 243 (2008).  This principle, however, does not prevent a court from properly characterizing an issue that has been improperly characterized by a party. Here, as discussed above, Lucero argues that his aggregate term-of-years sentence violates the Eighth Amendment under <u>Graham</u> and <u>Miller</u>.  Indisputably, this constitutes a claim that his sentence is unconstitutional, which properly falls under Rule 35(c).  <u>See</u> Crim. P. 35(c)(2)(I) ("Such an application for postconviction review must, in good faith, allege . . . [t]hat the conviction was obtained or <u>sentence imposed in</u> <u>violation of the Constitution or laws of the United States or the constitution or laws of</u> <u>this state</u>.") (Emphasis added)).  We therefore conclude that the court of appeals did not err in treating Lucero's claim as one under Rule 35(c).

¶27    Lucero makes two additional arguments, neither of which is persuasive.

¶28    First, Lucero's concern appears to be that considering his <u>Graham</u>/<u>Miller</u> claim under Rule 35(c) will have consequences for another Rule 35(c) motion he has pending

in the district court.[8]  We find that consideration of the consequences, if any, this case might have on that motion would be premature, and therefore we do not further address the issue.

¶29   Next, Lucero claims that if his Graham/Miller claim is treated as one under Rule 35(c), he should be entitled to a new hearing.  This argument ignores the fact that he had a hearing, which proceeded by offer of proof.  At the hearing, Lucero's counsel urged the court to consider Graham and argued that Lucero would die in prison before any meaningful opportunity for release.  The court ultimately denied Lucero's motion. In a written order the court acknowledged Lucero's age at the time of his offenses, but concluded that the court had taken Lucero's youth into "significant consideration" at the time of sentencing, and the sentences were appropriate due to the nature of the crimes and the court's reservations about whether Lucero had accepted full responsibility for his acts.  There is no merit to his claim that he is entitled to another hearing.

¶30   In sum, we conclude that the court of appeals did not err in treating Lucero's Graham/Miller claim as one under Rule 35(c).

### III.

¶31   We hold that Graham and Miller do not apply to aggregate term-of-years sentences imposed on juvenile offenders convicted of multiple offenses.  We further

---

[8] Lucero filed a Rule 35(c) motion in the district court after the court of appeals affirmed his sentence.  According to Lucero, his pending motion raises claims of ineffective assistance of counsel and a claim that his "life imprisonment without parole sentence" is unconstitutional.

hold that the court of appeals did not err in treating Lucero's claim as one under Rule 35(c). Accordingly, we affirm the court of appeals.

**JUSTICE GABRIEL** concurs in the judgment.

JUSTICE GABRIEL, concurring in the judgment.

¶32    In this and a number of other cases decided today, the majority concludes that the United States Supreme Court's opinions in <u>Graham v. Florida</u>, 560 U.S. 48 (2010), and <u>Miller v. Alabama</u>, 132 S. Ct. 2455 (2012), are limited to cases in which a juvenile offender receives the "specific sentence" of life without parole ("LWOP").  Maj. op. ¶ 15.  The majority thus concludes that <u>Graham</u> and <u>Miller</u> do not apply to cases in which a juvenile receives consecutive term-of-years sentences even if the aggregate sentence amounts, in practical effect, to an LWOP sentence.

¶33    In my view, the majority has misperceived and unduly limited the reach of <u>Graham</u> and <u>Miller</u>.  I would conclude, instead, that <u>Graham</u> and <u>Miller</u> apply to de facto LWOP sentences.  I would further conclude, however, that on the record before us, Lucero has not established that he, in fact, received a de facto LWOP sentence in this case.

¶34    Accordingly, I respectfully concur in the judgment only.

## I. Analysis

¶35    I begin by discussing the United States Supreme Court's recent jurisprudence in this area, and I explain why I believe that <u>Graham</u> and <u>Miller</u> apply to de facto LWOP sentences for juveniles.  I then proceed to apply that principle to the present case.

### A. U.S. Supreme Court's Recent Jurisprudence on Juvenile Sentencing

¶36    In <u>Roper v. Simmons</u>, 543 U.S. 551, 555, 568 (2005), the Supreme Court reconsidered the question of whether the Constitution bars capital punishment for juvenile offenders who were older than fifteen but younger than eighteen when they

1

committed a capital crime, ultimately concluding that it is unconstitutional to impose the death penalty on offenders who were under eighteen at the time of their offenses. In so ruling, the Court relied heavily on social science research indicating that juveniles have lessened culpability and are less deserving of the most severe punishments. Id. at 569–75. This research led the Court to opine that juvenile offenders are fundamentally different from adults for purposes of sentencing because (1) they lack maturity and have "an underdeveloped sense of responsibility"; (2) they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and (3) their characters are "not as well formed" as those of adults. Id. at 569–70 (quoting Johnson v. Texas, 509 U.S. 350, 367 (1993)). Based on these characteristics, the Court stated, "It is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Id. at 573.

¶37    In Graham, 560 U.S. at 74, the Court extended its holding in Roper to LWOP sentences for juveniles who had committed nonhomicide offenses. In Graham, the juvenile offender had committed a number of serious crimes while he was on probation. Id. at 54–55. The trial court ultimately revoked the juvenile's probation and sentenced him to the maximum sentence of life in prison. Id. at 56–57. Because Florida had abolished its parole system, this sentence gave the juvenile no possibility of release unless he was granted executive clemency. Id. at 57.

¶38    The juvenile challenged his sentence on appeal, and the Supreme Court ultimately held that "for a juvenile offender who did not commit homicide the Eighth

2

Amendment forbids the sentence of life without parole." Id. at 74. In reaching this conclusion, the Court explained:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of nonhomicide crime. What the State must do, however, is give defendants like Graham <u>some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation</u>. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

Id. at 75 (emphasis added).

¶39   The Court added that the rule that it was adopting gave "<u>all</u> juvenile nonhomicide offenders a chance to demonstrate maturity and reform. The juvenile should not be deprived of the opportunity to achieve maturity of judgment and self-recognition of human worth and potential." Id. at 79 (emphasis added).

¶40   In addition, as in <u>Roper</u>, the Court relied heavily on social science research and principles. For example, the Court surveyed LWOP sentences for juvenile nonhomicide offenders and concluded, "The sentencing practice now under consideration is exceedingly rare. And 'it is fair to say that a national consensus has developed against it.'" Id. at 67 (quoting <u>Atkins v. Virginia</u>, 536 U.S. 304, 316 (2002)). In addition, the Court reiterated its view that juvenile offenders are fundamentally different from adults for purposes of sentencing because (1) they lack maturity and have "an underdeveloped

3

sense of responsibility"; (2) they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and (3) their characters are "not as well formed."  Id. at 68 (quoting Roper, 543 U.S. at 569–70).

¶41     In expressing this view, the Court noted:

> [D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds.  For example, parts of the brain involved in behavior control continue to mature through late adolescence.  Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of "irretrievably depraved character" than are the actions of adults.  It remains true that "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed."

Id. at 68 (emphasis added) (citations omitted) (quoting Roper, 543 U.S. at 570).  The Court thus opined, "[W]hen compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability.  The age of the offender and the nature of the crime each bear on the analysis."  Id. at 69.

¶42     In light of the foregoing, and particularly given the unique psychological characteristics of juvenile offenders, the Court concluded that an LWOP sentence for a juvenile nonhomicide offender cannot be justified by the valid penological goals of retribution, deterrence, incapacitation, and rehabilitation.  Id. at 71–74.  To the contrary, such a sentence would be "an especially harsh punishment for a juvenile" because it "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days."  Id. at 70–71 (quoting Naovarath v. State, 779 P.2d 944, 944 (Nev. 1989)).

4

¶43 Finally, in <u>Miller v. Alabama</u>, 132 S. Ct. at 2460, the Court extended the reasoning of <u>Roper</u> and <u>Graham</u>, this time holding that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"  As in <u>Roper</u> and <u>Graham</u>, the Court recognized that for sentencing purposes, juveniles are constitutionally different from adults because they have "diminished culpability and greater prospects for reform" and therefore are less deserving of the most severe punishments.  <u>Id.</u> at 2464.  In addition, the Court reiterated its views that children (1) lack maturity and have an underdeveloped sense of responsibility, leading to "recklessness, impulsivity, and unnecessary risk-taking"; (2) are particularly vulnerable to negative influences and outside pressures, leading to more limited control over their environments and the inability to extricate themselves from crime-producing settings; and (3) have characters that are not as well formed as those of adults and traits that are less fixed, making a child's actions less likely to evince irretrievable depravity.  <u>Id.</u>

¶44 And as pertinent here, the Court stated:

> Most fundamentally, <u>Graham</u> insists that youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole.  In the circumstances there, juvenile status precluded a life-without-parole sentence, even though an adult could receive it for a similar crime.  And in other contexts as well, the characteristics of youth, and the way they weaken rationales for punishment, can render a life-without-parole sentence disproportionate.  "An offender's age," we made clear in <u>Graham</u>, "is relevant to the Eighth Amendment," and so "criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed."

<u>Id.</u> at 2465–66 (quoting <u>Graham</u>, 560 U.S. at 76).

5

¶45 Applying the foregoing principles, several of the court of appeals divisions whose opinions are before us today and many courts across the country have concluded that the rationale of the above-described Supreme Court cases extends to cases in which a juvenile offender receives the functional equivalent of an LWOP sentence. See, e.g., Budder v. Addison, 851 F.3d 1047, 1053 & n.4 (10th Cir. 2017); Moore v. Biter, 725 F.3d 1184, 1191–92 (9th Cir. 2013); People v. Caballero, 282 P.3d 291, 293, 295 (Cal. 2012); Casiano v. Comm'r of Corr., 115 A.3d 1031, 1044–45 (Conn. 2015); Henry v. State, 175 So. 3d 675, 679–80 (Fla. 2015); People v. Nieto, 52 N.E.3d 442, 452 (Ill. App. Ct. 2016); State v. Null, 836 N.W.2d 41, 71 (Iowa 2013); State v. Zuber, 152 A.3d 197, 211–12 (N.J. 2017); State v. Ramos, 387 P.3d 650, 658 (Wash. 2017); Bear Cloud v. State, 334 P.3d 132, 141–42 (Wyo. 2014).

¶46 As one court aptly put it:

> A term of years effectively denying any possibility of parole is no less severe than an LWOP term. Removing the "LWOP" designation does not confer any greater penological justification. Nor does tinkering with the label somehow increase a juvenile's culpability. Finding a determinate sentence exceeding a juvenile's life expectancy constitutional because it is not labeled an LWOP sentence is Orwellian. Simply put, a distinction based on changing a label, as the trial court did, is arbitrary and baseless.

People v. Nunez, 125 Cal. Rptr. 3d 616, 624 (Cal. Ct. App. 2011) (review dismissed Oct. 17, 2012).

¶47 In my view, the Nunez court's rationale properly captures the import of the Supreme Court cases discussed above. Those cases reflect an unmistakable progression toward providing more protection for juvenile offenders facing a potential sentence of life behind bars with no realistic opportunity for release. To that end, the Supreme

6

Court's cases make abundantly clear that (1) juveniles are fundamentally different because, among other things, they lack maturity, have an underdeveloped sense of responsibility, are more vulnerable to and susceptible of negative influences, and have characters that are not well formed; (2) juveniles are more capable of change than adults; (3) LWOP sentences are especially harsh on juveniles because they mean a denial of hope, and they suggest that good behavior and character are immaterial; and (4) youth matters, and juvenile offenders <u>must</u> be given the opportunity to obtain release based on demonstrated maturity and rehabilitation.

¶48 These principles apply equally to both a literal LWOP term and a de facto one. Indeed, as noted above, <u>Graham</u> itself did not involve a literal LWOP prison term. <u>Graham</u>, 560 U.S. at 56–57. Rather, the life sentence at issue amounted to a de facto LWOP term because Florida had abolished its parole system. <u>See</u> <u>id.</u> at 57. As the <u>Nunez</u> court stated, a term-of-years sentence that effectively denies a juvenile offender any possibility of parole is no different from a literal LWOP sentence. <u>See</u> <u>Nunez</u>, 125 Cal. Rptr. 3d at 624. Thus, approving a term-of-years sentence that results in a de facto LWOP prison term, as the majority has done today, is directly contrary to the Supreme Court's clear mandate that juvenile offenders <u>must</u> be given a meaningful and realistic opportunity to obtain release based on demonstrated maturity and rehabilitation. <u>See</u> <u>Graham</u>, 560 U.S. at 75, 82.

¶49 For these reasons, I respectfully disagree with the majority's conclusion that <u>Graham</u> and <u>Miller</u> do not apply to term-of-years sentences resulting in de facto LWOP prison terms. I would conclude, instead, that <u>Graham</u> and <u>Miller</u> apply to such

sentences, and in my view, the question before us should turn on whether the sentence at issue was, in fact, a de facto LWOP sentence.

¶50    I am not persuaded otherwise by the majority's reliance, <u>see</u> maj. op. ¶ 21, on the distinction made in <u>Miller</u> between mandatory sentencing schemes and other types of sentences.  As the majority observes, in <u>Miller</u>, 132 S. Ct. at 2474–75, the Supreme Court noted that "a judge or jury could choose, rather than a life-without-parole sentence, a lifetime prison term <u>with</u> the possibility of parole or a lengthy term of years."  Maj. op. ¶ 21.  The majority concludes that this distinction shows that <u>Miller</u> was limited to the sentence at issue in that case, namely, mandatory LWOP, and does not extend to lengthy aggregate sentences or life sentences with the possibility of parole.  <u>Id.</u>  I believe, however, that the quotation from <u>Miller</u> supports my interpretation: the Court made clear that a juvenile offender <u>must</u>, in <u>any</u> nonhomicide case, have the possibility of parole during his or her lifetime.

## B.  Application

¶51    To determine whether a juvenile offender's sentence amounts to a de facto LWOP term, I would assess whether the sentence at issue denies the juvenile offender any meaningful opportunity for release within his or her life expectancy and whether the sentence fails to recognize that juveniles are more capable of change than are adults and thus their actions are less likely to result from an "irretrievably depraved character."  <u>See</u> <u>Graham</u>, 560 U.S. at 68; <u>Roper</u>, 543 U.S. at 570.

¶52    In practice, such an inquiry would require courts to determine whether the juvenile offender will be afforded a realistic <u>opportunity</u> to be paroled (as opposed to a

8

guarantee of parole) within his or her life expectancy. A juvenile offender who would not be parole eligible until he or she was 200 years old would not have been afforded a realistic opportunity to be paroled within his or her life expectancy, and in my view, such a sentence would amount to a de facto LWOP sentence. See Graham, 560 U.S. at 79 ("Terrance Graham's sentence guarantees he will die in prison without any meaningful opportunity to obtain release, no matter what he might do to demonstrate that the bad acts he committed as a teenager are not representative of his true character, even if he spends the next half century attempting to atone for his crimes and learn from his mistakes. The State has denied him any chance to later demonstrate that he is fit to rejoin society based solely on a nonhomicide crime that he committed while he was a child in the eyes of the law. This the Eighth Amendment does not permit.").

¶53 Conversely, a juvenile offender who would be parole eligible at the age of thirty would likely be deemed to have been afforded a meaningful opportunity for parole in his or her lifetime, and such a sentence would not amount to a de facto LWOP sentence.

¶54 Applying these principles here, and assuming without deciding that attempted murder is, as Lucero contends, a nonhomicide crime, I would conclude that Lucero did not receive a de facto LWOP sentence. As the division below found, People v. Lucero, 2013 COA 53, ¶ 12, ___ P.3d ___, and the record supports, Lucero will be eligible for parole at the age of fifty-seven, which is within his natural life expectancy. Accordingly, under Graham, 560 U.S. at 75, the State has given Lucero "some meaningful opportunity to obtain release based on demonstrated maturity and

9

rehabilitation." Therefore, on the record before us, Lucero has not established that he, in fact, received a de facto LWOP sentence in this case.

## II. Conclusion

¶55 For these reasons, like the majority, I would affirm Lucero's sentence, albeit on grounds different from those on which the majority relies. Accordingly, I respectfully concur in the judgment reached by the majority but not in its analysis of the issue presented.